### JOHN CUDE v. THE STATE.

No. 3422.  Decided October 31, 1906.

**Incest—Insufficiency of Evidence.**

Where upon trial for incest the testimony for the State simply raised a suspicion, and was not corroborated by facts that could have been easily obtained, the same was not sufficient to sustain a conviction of incest.

Appeal from the District Court of Rains. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of incest; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Wynne & Blanks,* for appellant.—Jennings v. State, 66 S. W. Rep., 778.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, ¡Presiding Judge.—This is a case of incest, appellant being allotted a term of ten years in the penitentiary. It may be stated in substance, so far as the testimony is concerned, that appellant was the father of the girl, that he took her to the residence of Rhodes, in Rains County,—appellant living in Van Zandt County, and obtained board for her at the residence of Rhodes, where she remained for two weeks. The girl proved to be pregnant, and Mrs. Rhodes required her to write her father the information that she could no longer board her. This she did, and her father came and took her away. Rhodes was paid one dollar by appellant to carry the trunk of the girl to the depot at Emory. Appellant and the girl went in the direction of Emory, to take the train. They reached a branch, near the little town, which seems to have been surrounded by brush and timber, and stopped. They were overheard talking by White, who reported it to his father, George White. George White went for the sheriff, and together they went down to where defendant and his daughter were on the branch. They heard them talking, and approached them. Nothing was said between the father and daughter that was understood by either of the witnesses. The sheriff testified, and if this conviction can be sustained, it is upon his testimony, that he and White stopped and listened and could hear the mumbling of. voices down the branch. This was about 11 o'clock at night. They went on down the bed of the branch for some distance, the sheriff being in the lead and White following. It was a dark night, and he did not see the parties until close to them. After going down the branch some distance, the sheriff says: "I discovered some one sorter up on the rise of the branch, and immediately struck a match and asked him what he was doing there. I then discovered a woman sitting on the bank of the branch, and the man then sat down by the side of the woman. When I first saw the man raising up in a stooping position his back was turned toward me. I asked him who he was, and what he was doing down there, and asked this question at least twice before he made any reply. He then said, that the woman was his daughter and they had come down there to eat their supper. That they were waiting for a train. I asked, why he did not go to the hotel. He said he did not have money enough to pay a hotel bill and pay their way to Grand Saline. This man was the defendant, John Cude, and the woman was Delmer Cude, whom he claimed was his daughter. I struck several

matches, and examined the ground closely where I first discovered the woman sitting and the place from where I saw the man rising up. I saw an impression on the sand that had the appearance of having been made by the hips, back, shoulders and head of a person; and I further noticed an impression that seemed to have been the imprints of human hands near and on each side of the shoulder prints. I saw and also noticed impressions of what seemed to be a person's knees near the impression of the hips, and still down from the hip impression and below the knee impressions, I saw toe prints in the ground, as if pushed back. The next morning I went back and made a careful examination of this ground and found the same prints, and evidences as described above." This witness arrested appellant, placed him in jail, and carried the girl to the hotel. White, who accompanied him, agreed with the testimony of Osborne, the sheriff, as to the facts including the conversation occurring between Osborne and appellant. But this witness states that he made no examination of the ground where the parties were, to see whether there was any impression on the ground. He says that the sheriff struck several matches while there and seemed to be examining the ground where the parties were. This is the State's case. Appellant introduced no testimony. It is contended that this is not of sufficient cogency to require an affirmance of this case or authorize a conviction. If the circumstances were as the sheriff says, they were upon the ground, it would have been an easy matter for him to have stated something at the time in regard to it, and call White's attention thereto. But this was not done, nor were any witnesses called upon to examine the ground with him on the following morning. Such impressions upon the sand, as they contend this was, on the bank of the creek, would have indicated that the woman, if she lay upon the ground a sufficient length of time to have made such impression upon the soil as detailed, would have left some evidence upon her clothing. Her clothing does not seem to have been examined. If appellant's knees made an impression in the soil, or his hands, or any of his clothing touched it so as to leave impressions by reason of the weight of his body, certainly there would have been some evidence of the soil or sand upon his clothing at the time the sheriff found him. This testimony, it occurs to us, is not of sufficient cogency to authorize the conviction of a man for such an infamous crime as this. In other words before a man should be sent to the penitentiary for incest with his daughter, the testimony ought to be of more cogency. This is hardly as strong at least no stronger than Sauls v. State, 30 Texas Crim. App., 496; Gay v. State, 2 Texas Crim. App., 133; Tuberville v. State, 4 Texas, 130; Baldwin v. State, 15 Texas Crim. App., 275; Jennings v. State, 66 S. W. Rep., 778; Davis v. State, 43 Texas, 189. If it be conceded that these impressions upon the ground were suspicious, then the corroboration to add and make more cogent the force of these facts were easily at hand and could have been made to appear. White's testimony to the effect that these matters

were as detailed by the sheriff would have added cogency. He was present and his attention was not called to them, nothing was said by the sheriff indicating at the time that he discovered such testimony. Eliminating these circumstances as detailed by the sheriff and there is but one other fact of any cogency in the case, that is, that the girl was pregnant. There was no evidence introduced tending to show that appellant was the author of her shame. They came from Van Zandt to Rains County, and if any of the circumstances existed that showed their familiarity at the place of their residence, witnesses could have been obtained. In fact, this case presents itself in such manner that we have a suspicion, made by the sheriff's evidence, when those suspicions, if true, could have been strongly corroborated by facts that could have been easily obtained at the time he found them at the branch, and by the circumstances of their past life, if the familiarity existed in Van Zandt County where they lived, and before the girl was brought to Rains County. We are not willing that a conviction for a crime so heinous as this, should stand under such slight evidence, and where, if true, stronger and more cogent testimony could have been obtained. The judgment is reversed and the cause remanded.

*Reversed and remanded.*